### HOLMES v. WILLIAMS & CRARY.

In the construction of a will the intent of a testator is to govern when consistent with the policy of the law, and the intent is ordinarily to be taken from the words of the will.

APPEAL from an order of the Court of Probate, in refusing to appoint freeholders to distribute a part of the estate of William Wheeler Sr. deceased, to his six sons-in-law and their heirs.

The case was as follows, viz. William Wheeler, Sr. was seized of said premises, and on the 13th of August A. D. 1747 made his will and devised as follows, viz. I give and bequeath to my grandson William Wheeler the farm I now live on, with the buildings, bounded as follows, viz. [bounds it out] to him my said grandson, his heirs and assigns forever; upon condition he pays to my granddaughter Hannah Wheeler £200 old tenor bills, when he arrives to full age; but in case my grandson William dies without issue lawfully begotten of his body, then I give said land, houses, etc. to my six sons-in-law, and my granddaughter Hannah Wheeler, to be equally divided between them. And wills that the remainder of his estate should be shared by his six sons-in-law, in equal proportions, etc.

William the grandson survived the testator, arrived to full age, and paid the granddaughter Hannah her legacy of £200 and entered and took possession of the estate. And afterwards by deed of bargain and sale with covenants of seisin and warranty, sold 200 acres of said land to said Williams, one of the sons-in-law for £800; the residue of said farm given him as aforesaid, he sold in like manner to said Crary, another son-in-law for the sum of £1,100 lawful money: That William Wheeler the grandson was dead without issue of his

body; and said Hannah the granddaughter and all the sons-in-law, except said Williams and Crary, died before William the grandson; and Holmes the appellant is a son of one of the deceased sons-in-law.

The question was — What estate William the grandson had in the lands devised to him. Whether a fee-simple absolute, or a fee conditional, defeasible upon his dying at any period of his life without issue. If the latter, then there is no question but what it would go to the sons-in-law and their heirs, by force of the will. If the former, then the Court of Probate has done right, and the estate is well vested in the grantees of the grandson said Williams and Crary.

The court are of opinion — That William the grandson had an absolute fee vested in him, and affirm the doings of the Court of Probate.

It is an agreed principle of law as well as of reason, that in the construction of wills, the intent of the testator is to govern, provided his intent is consistent with the general policy of the law; and that his intent is to be collected from the will. 1st. It is evident from the will, that William the grandson was the principal object of the testator's bounty; and that the testator intended him a benefit at all events, by this devise. 2d. To make a provision for his granddaughter Hannah, out of the interest given to his grandson. And 3d. That none of his estate should be left intestate.

Now if, after he had given this estate to his grandson and his heirs, upon condition of his paying his granddaughter her legacy, on his arriving to full age, he had said no more in the event of his grandson's dying before he arrived of age, all his purposes would have been defeated; the grandson would have taken nothing; this part of his interest would have been intestate, and his granddaughter not have been provided for. Also further contemplating, that in case his grandson should thus die before he comes of age, and leave lawful issue of his body, it might be a doubt whether such issue could take the estate and perform the condition. To guard against and to

obviate all these difficulties which might arise, he adds the following clause; but in case my grandson dies without issue, etc. then I give, etc.

The question upon this case is — What time, dying without issue refers to, whether to any time indiscriminately, or to the time before he arrived of age.

The court are of opinion — That it refers to the latter only; for the following reasons: 1st. The words taken in connection with what precedes and follows evidently carry that meaning. 2d. It was not necessary they should extend beyond that period in order to answer the purposes of the will, for upon the grandson's arriving of age and paying the legacy, the estate would become vested in him, and the granddaughter be provided for, and no part of his interest be left intestate. 3d. If it refers to any time indiscriminately, then, if the grandson should be so unfortunate as never to have lawful issue, he could never call the estate his own, could never dispose of it let him live ever so long; which would be a disadvantage and an embarrassment to him that could never have been the intention of a benevolent grandfather to bring upon a favorite grandson, whom he designed to advance in life. 4th. The legacy was a gross sum ordered to be paid upon his arriving of age. In case the grandson had died immediately after payment, that which was intended for his benefit would have been to his disadvantage; for the £200 would have been paid out of his estate, without having any opportunity to reimburse it from the estate devised to him. The obvious intent of the testator, collectible from the will is, as though he had said, that in case his grandson William died without issue lawfully begotten of his body, before he arrived to full age, that then the estate should go to the six sons-in-law and the said Hannah, etc.

This judgment of the Superior Court was reversed in the Supreme Court of Errors, in June, A. D. 1795, for the following reasons, viz.