MARY J. GLOVER *et al.*

*v.*

MOSES B. CONDELL *et al.*

*Filed at Springfield November 10, 1896.*

1. WILLS—*when to be regarded as a bequest of personalty.* A will directing the executors to sell the estate, real and personal, and pay all the legacies out of the proceeds, is to be regarded as a bequest of personalty, and not of land.

2. SAME—*when death of legatee will not cause legacy to lapse.* The rule that if a legatee dies before the testator the legacy lapses, does not extend to a legacy given over to a second legatee after the death of the first.

3. SAME—*what provisions for wife will lapse by her death.* The death of the testator's wife before his death will cause to lapse not only dividends to be paid her during life on a portion of the estate given in trust for a son, and, in case of his death without living issue, to her, but also a provision for adding the share of any child dying without living heirs of his body to the sum held in trust for her benefit for life.

4. SAME—*case in which bequest over does not lapse by death of the first legatee.* The lapsing of a provision for the addition to the sum held in trust for the testator's wife of the share of a child dying without living children, does not cause to lapse a further provision that upon the death of the widow the same shall be divided among the testator's children in the same manner as is provided for the distribution of her share.

5. SAME—*construction of particular provision of will.* A provision of a will that the share of a child dying without children shall be added to the sum held in trust for the benefit of the testator's wife, and upon her death "shall be divided amongst my children in the same manner as is provided for the distribution of her share," while the will provided only for payment of the *interest* upon the wife's share to the children, and not the principal, will be construed to provide for the division of the deceased child's share among the children in the manner provided for the distribution of dividends of the wife's share.

6. SAME—*bequest for life with remainder over—rule in Shelly's case.* A bequest to the testator's son, and, in case of his death without living heirs of his body, then over, gives him the ownership of the fund subject to the limitation over upon such contingency, whether the rule in *Shelly's* case is applied or not.

7. SAME—*limitation over of chattels good in equity as an executory devise.* Modern equity (though not the common law) holds a limitation

over, by will, of chattels, after the death of the first taker, to be good as an executory devise.

8. SAME—*limiting a fee upon a fee—executory devise.* Though a fee cannot be limited upon a fee by deed, it can be so limited by will by way of executory devise. (*Ewing* v. *Barnes*, 156 Ill. 61, overruled; language of *Silva* v. *Hopkinson*, 158 id. 386, restricted.)

9. STATUTE OF USES—*does not apply to personalty.* Personal property is not within the Statute of Uses.

10. PERPETUITIES—*what words import a definite, and not indefinite, failure of issue.* A gift over in the event of the death of any of the testator's children "without living heirs of their body" imports a definite failure of issue, and does not contravene the rule against perpetuities, especially where the gift is of personalty, and the share of any child dying without living heirs is to be divided among the remaining children of the testator.

11. RELEASE—*effect of quit-claim of interest in estate—contingent interest.* An ordinary quit-claim of all the "claim, right, title and interest" of the releasor in his father's estate will not cover a future contingent interest limited to the surviving members of a class of which he is a member, upon the event of the death of one of them without living issue, where no terms are used which refer to future interests.

12. TRUSTS—*to divide fund among children "as circumstances may require"—effect.* A testamentary trust to divide a fund among the testator's children in such proportions as their circumstances may require to keep them from want or to furnish necessaries for themselves and their children, will be executed by the court by an equal division among the children, where none of them require to be kept from want or to be furnished with necessaries.

13. ADVANCEMENTS—*when provision as to, does not cut off contingent bequest.* Under a provision of a codicil that if, in the "settlement" of the estate, it shall appear that the amount advanced to a son exceeds his share, then his share shall be what he has already received and his notes shall be canceled, the interest of the son in an executory contingent bequest accruing upon the death of another son without living heirs, in the course of the execution of a testamentary trust, is not cut off.

*Condell* v. *Glover*, 56 Ill. App. 107, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Adams county; the Hon. OSCAR P. BONNEY, Judge, presiding.

This is a bill filed on February 13, 1893, by Mary J. Glover and Emily Montgomery, daughters of Thomas Condell, deceased, and devisees under his will, and Winthrop Sudduth, who was appointed successor in trust under said will on May 14, 1892, by decree of the circuit court of Adams county, against Moses B. Condell and Thomas E. Condell, sons of said Thomas Condell and devisees under his will, alleging, among other things, "that by virtue of advancements to and releases by said Moses B. and Thomas E., and the matters alleged, neither of them had at the death of said Thomas Condell, nor now have, any interest remaining in or to the estate of said Thomas Condell, deceased, under his will and codicil, either directly or by way of contingent remainder, upon the death of Albert B. Condell" hereinafter named; and further alleging that "by reason of the questions arising concerning the construction of said will and codicil and said releases, upon the matters above stated, your orator, Winthrop Sudduth, trustee, is in doubt to whom to pay the interest accrued on the trust fund of $14,000.00 since October 30, 1892, the date of the death of said Albert B. Condell, who was entitled to the interest of said fund while he lived, and whether he should pay over the principal of, or only the interest upon, said fund to the parties entitled, and he desires the construction of said will as to his duties as trustee thereunder, and to administer the trusts of said will under the direction of the court;" and praying "that said will and codicil and releases may be construed by the court, and trusts of said will carried into effect, and the rights and interests of all the parties under said will may be ascertained and declared; that the trusts of said will and codicil may be performed and carried into execution by and under the direction of the court; that the duties of said trustee as to the management, investment and distribution of the said trust fund, under said will, be determined; that an account may be taken, with prayer for general relief." Default was en-

tered against Thomas E. Condell. Moses B. Condell filed an answer denying the material allegations of the bill, and denying that he had no further interest in the fund in litigation.

The circuit court, upon a hearing, declared and decreed that the two sums of $14,000.00 held by Sudduth, as trustee, respectively, for Emily E. Montgomery and Albert B. Condell were and are parts of the testator's estate, and that Moses B. Condell and Thomas E. Condell, having received, by way of advancement, amounts in excess of the one-sixth share each of the testator's estate, had no interest or right whatever in the fund accruing to Albert B. under the will, but that all interest and right in such trust fund vested in Mary J. Glover and Emily Montgomery, to whom the court decreed the trustee should pay and disburse such fund in accordance with the provisions of the will.

Moses B. Condell prosecuted an appeal from the decree of the circuit court to the Appellate Court. The Appellate Court reversed the decree of the circuit court, and remanded the cause, with directions "to the chancellor to declare, by a decree to be entered in the cause, that the fund created by the will in favor of Albert B. Condell, and upon which he was entitled to receive the interest accruing during his lifetime, upon the death of said Albert B. constituted a trust fund to be held by a trustee, acting under the provisions of the will of Thomas Condell, deceased, and to decree that such fund shall be administered as follows: Such trustee shall invest the fund in stocks or cause it to be loaned out at interest with good security, and shall pay the interest or dividends derived therefrom to Mary J. Glover, Emily Montgomery, Moses B. Condell and Thomas E. Condell in equal parts, unless a greater proportion shall be required to be paid to some one of them to keep them from want or to furnish them with the necessaries of life for themselves or children, in which event said trustee shall apply

to a court sitting in chancery for specific directions as to his duties."

. The present appeal is prosecuted from the judgment of the Appellate Court. The material facts, as set up in the pleadings and as established by the proofs, are substantially as follows:

. Thomas Condell died on October 11, 1880, in Lyon county, Kansas, leaving a will dated December 23, 1865, and a codicil thereto, dated August 19, 1867. The will is as follows:

"I, Thomas Condell, of Sangamon county, in the State of Illinois, do make and ordain this, my last will and testament, in manner following, to-wit:

"*First*—I devise to my wife, Elizabeth H. Condell, so much of my household and kitchen furniture and provisions as she may think fit to retain for her own use.

"*Secondly*—I direct that my executors hereinafter named shall sell all the rest of my estate, real and personal, which I may leave at my death, except my homestead, on such terms as they may deem advisable; and they are also authorized to sell my homestead, with the consent of my wife, Elizabeth H. Condell, and to make all necessary and proper conveyances of such real estate as they may sell.

"*Thirdly*—Out of the first proceeds of my estate my executors are to pay to my wife, Elizabeth H. Condell, such an amount as will, with the amount charged to her in the account attached to this will, make up the sum of $5000.00, to be at her absolute disposal.

"*Fourthly*—All the remainder of the proceeds of my estate, including cash on hand, debts due to me, stocks or bonds, to which shall be added all the advances I have heretofore made to each one of my children or shall hereafter make from time to time, as the same are or hereafter may be charged and set forth in the account attached to this will, which account will be charged in my own handwriting, and the sum of my estate then on

hand, composed of all advances made to my children, debts due to me by my children for money loaned them, debts due to me by other persons, stocks, bonds, etc., (except the specific sum devised to my wife,) shall then be divided into six equal parts, one part for the use of my wife, and one part for the use of each of my children, Moses B. Condell, Mary Jane Glover, Thomas E. Condell, Emily Montgomery and Albert B. Condell, to be disposed of as hereinafter directed.

"(a) The sixth part devised to my wife is to be held in trust by my executors hereinafter named, and invested in stocks or loaned out at interest, with good security, during the lifetime of my wife, and the interest or dividends thereof are to be paid to my wife as they may accrue and are received, for her own use during her natural life, and after her death the same is to be held in trust by my executors as trustees, to be invested in stocks or loaned out at interest with good security, and the interest or dividends is to be divided amongst my children in such sums to each and in such manner as she, my wife, may direct by will as she may think their circumstances may require, and if my wife should not make a will, then my executors, as trustees, shall hold the same in trust, and pay the interest or dividends derived therefrom to my children in such proportions as their circumstances may require to keep them from want or to furnish them the necessaries of life for themselves and children.

"(b) The parts devised for the use of each one of my children is to be made up of the amounts charged in the account kept and to be kept, as aforesaid, against each one of them, and such sum of money or notes or stocks as will make the one-sixth part, as aforesaid, and so much is to be paid at once to Moses B. Condell as will, with the advances charged to him, amount to one-half of his sixth part, as aforesaid, and the other half of the sixth part devised to him is to be held by my executors as trustees, and in trust for him, and is to be loaned out on good

security or kept invested in stocks, and the interest or dividends is to be paid over to him as the same accrues and is received, during his natural life, and after his death the principal of his share or part is to be paid over to his heirs.

"(c) And so much is to be paid over at once to Mary Jane Glover as will, with the advances charged to her, amount to one-third of her sixth part, as aforesaid, and the other two-thirds of her sixth part as devised to her is to be held by my executors as trustees, and in trust for her, and is to be loaned out on good security or kept invested in stocks, and the interest or dividends is to be paid over to her as the same accrues and is received, during her natural life, and after her death the principal of her share or part is to be paid over to her heirs.

"(d) And so much is to be paid at once to Thomas E. Condell as will, with the advances charged to him, amount to one-third of his sixth part, as aforesaid, and the other two-thirds of his sixth part devised to him is to be held by my executors as trustees, and in trust for him, and is to be loaned out on good security or kept invested in stocks, and the interest or dividends is to be paid over to him as the same accrues and is received, during his natural life, and after his death the principal of his share or part is to be paid over to his heirs.

"(e) And so much is to be paid at once to Emily Montgomery as will, with the advances charged to her, amount to one-third of her sixth part, as aforesaid, and the other two-thirds of the sixth part devised to her is to be held by my executors as trustees, and in trust for her, and is to be loaned out on good security or kept invested in stocks, and the interest or dividends is to be paid over to her as the same accrues and is received, during her natural life, and after her death the principal of her part or share is to be paid over to her heirs.

"(f) The part devised to my son Albert B. Condell is to be kept by my executors entire at interest or invested

until he shall arrive at legal age, and so much of the interest or dividends as may be necessary to his support and to give him a good education shall be applied to that purpose by my executors, and when he shall arrive at lawful age he is to receive one-third of his sixth part, and the other two-thirds of the sixth part devised to him is to be held by my executors as trustees, and in trust for him, and is to be loaned out on good security or kept invested in stocks, and the interest or dividends is to be paid to him as the same accrues and is received, during his natural life, and after his death the principal of his share or part is to be paid to his heirs.

"(*g*) If by misfortune, affliction or otherwise any of my children should not make a proper use of the income to be derived from their trust fund, my executors and trustees are hereby directed and authorized to use said income in such a manner as will insure to them the necessaries of life and keep them from want. In the event of the death of any of my children without living heirs of their body their share of my estate shall be added to the sum held in trust for the benefit of my wife, Elizabeth H. Condell, during her natural life, and after her death the same shall be divided amongst my children in the same manner as is provided for the distribution of her share.

"I do hereby appoint my wife, Elizabeth H. Condell, my son-in-law, John M. Glover, John S. Condell, William I. Condell, John T. Peters and Charles W. Matheny executors of this my last will and testament, and I direct that they shall not be required to give any bond or security."

The codicil to the will is as follows:

"If in the settlement of my estate according to the provisions of the foregoing will it should appear that the amount advanced and loaned to my son Moses B. Condell should exceed his share of my estate, then his share shall be what he has already received, and his notes shall be canceled and delivered to him. In the settlement with the share of my son Thomas E. Condell, if he

should die without heirs except his daughter, Nellie, his share in my estate shall revert to my wife, Elizabeth H. Condell's share, and be held for her use as is provided for her share, except any sum, not exceeding $5000.00, she or my executors may see fit to give to his daughter, Nellie, in trust for his said daughter, Nellie, the interest of which is to be paid to the said Nellie annually, for her individual use and no other purpose whatever."

The testator's wife, Elizabeth H. Condell, died intestate in his lifetime, to-wit: on December 5, 1876. He left no widow, but five children, namely, Moses B. Condell, Mary J. Glover, Thomas E. Condell, Emily Montgomery and Albert B. Condell, (the latter since deceased), his heirs and legatees under his will. Charles W. Matheny, one of the executors named in the will, died in the lifetime of the testator, and three of the executors therein named, John S. Condell, William I. Condell and John T. Peters, declined to act and filed written renunciations. The testator owned at his death about 5800 acres of land and personal property in Lyon county, Kansas, and also other real and personal estate in Sangamon county, Illinois. The will and codicil were admitted to probate in Lyon county, Kansas, on December 6, 1880, and letters of administration with the will annexed were issued to J. Jay Buck of that county. On February 16, 1881, a duly authenticated transcript of said will and codicil was presented to and spread upon the records of the county court of Sangamon county, Illinois, and on that day and in that court John M. Glover, (who has since deceased), the husband of Mary J. Glover, took out letters testamentary and qualified as executor and trustee under said will; and on November 28, 1881, he was empowered by said probate court of Lyon county, Kansas, to act as trustee under said will there, and did so act.

The advancements made to Moses B. Condell, as charged in the account attached to the will, amount to $10,348.70, upon $5348.70 of which he was to be charged

interest at the rate of ten per cent per annum from January 1, 1869; the advancements made to Mary Jane Glover, as charged in said account, amount to $5700.00, with interest at ten per cent per annum on $300.00 thereof from September 29, 1870, on $300.00 thereof from January 1, 1871, and on $100.00 thereof from February 28, 1871; the advancements made to Thomas E. Condell and Emily Montgomery amount to $10,000.00, $5000.00 to each. It would appear that there was advanced to Albert B. Condell about $4500.00. The record shows, that notes were executed by Moses B. Condell to his father before the date of the will amounting to $22,840.00, and after the date of the will and up to February 2, 1871, amounting to $9433.00, aggregating $32,273.00, and all drawing interest at the rate of ten per cent per annum. Other advances were made to Thomas E. Condell, it being found by the decree that there was about $35,000.00 chargeable upon his share.

On January 19, 1882, Mary J. Glover, Emily Montgomery and Albert B. Condell entered into the following agreement:

"This article of agreement, signed, sealed and delivered by and between Mary Jane Glover, wife of John M. Glover, of La-Grange, Missouri, Emily Montgomery, of Muncy, Pennsylvania, and Albert B. Condell, of New York City, witnesses:

"*First*—That Thomas Condell, late of Lyon county, Kansas, left at his decease only five children, viz.: Moses B. Condell, of Sangamon county, Illinois, Thomas E. Condell, of California, said Mary Jane Glover, Emily Montgomery and Albert Condell; that said Moses and Thomas E., in the lifetime of their father, received from him such advancements that neither of them is now entitled to any part of his estate, and the said estate is to be divided entirely between said Mary, Emily and Albert.

"*Second*—That said Mary, Emily and Albert have come to the following agreement in respect to said estate: The said Emily and Albert have agreed with the said Mary that they will make, sign and seal an instrument of writing in form of their deed, duly acknowledged, purporting to convey, with general warranty, to said Mary, for her sole, separate and exclusive use, in consideration of $42,000.00, all their interest, real,

personal and mixed, in said estate of Thomas Condell, deceased, and place the same in the hands of U. S. Penfield, Esq., as cashier of the First National Bank of Quincy, Illinois, as an escrow, and to be delivered to said Mary as their deed, on said Mary's depositing with the said bank the sum of $7000.00 to the credit of the said Emily Montgomery, and the further sum of $6450.00 to the credit of said Albert B. Condell.

"*Third*—The said Mary Jane Glover is to sell and convey and dispose of the property so conveyed to her, for such price for cash or on credit, and in such manner, as will secure to said Emily and Albert the further sum of $14,000.00 each, with six per cent interest from sale, and satisfy and discharge all debts and liabilities of the said estate of Thomas Condell, deceased. As soon as said Mary shall sell and dispose of said property for cash or on credit, the unpaid purchase money being secured by notes and deed or deeds of trust on the property sold, she shall turn over in cash or in paper, or in cash and paper, so secured, to the trustee appointed under the will of Thomas Condell by the probate court of Lyon county, Kansas, the sum of $14,000.00 for the use of said Emily, and the sum of $14,000.00 for the use of said Albert, according to the said will.

"*Fourth*—That all the residue of the proceeds of sale and of the estate of said Thomas Condell, after paying the sum of $21,000.00 each to said Emily and Albert, as mentioned, and after paying all debts and liabilities of said estate of Thomas Condell, deceased, shall belong absolutely to said Mary Jane Glover in consideration of her services herein to be rendered by her or her agent.

"In testimony whereof, the said Emily Montgomery, Albert B. Condell and Mary Jane Glover have hereunto set their hands and seals this 19th day of January, 1882.

| | |
|---|---|
| MARY J. GLOVER, | [Seal.] |
| EMILY MONTGOMERY, | [Seal.] |
| A. B. CONDELL. | [Seal.]" |

In February, 1882, Mary J. Glover paid to Emily Montgomery $7000.00, and to Albert B. Condell $6450.00, through the First National Bank of Quincy in accordance with the agreement, and thereupon said Emily and Albert conveyed to said Mary all their right, title and interest in and to more than 5000 acres of the lands in Kansas and in and to the real and personal estate of said testator. Thereafter said lands were sold by the trustee and

administrator to Hiram and William Miller, and the purchase money was secured by note or notes and trust deed upon the lands.   Buck, administrator, made his final settlement in said probate court in Kansas on July 3, 1883, and was discharged, but said Glover was not formally discharged, although he fully performed the trusts of the will in Lyon county, Kansas.   Mary J. Glover on the sale of said lands and the gradual payment therefor, turned over to said John M. Glover as trustee $14,000.00 for the use of said Emily and $14,000.00 for the use of said Albert by delivering to him the Miller notes and trust deed.   Mary J. Glover received nothing on her share of the estate, the advancements and loans to her with interest being about equal to her share, except as said agreement provided.   On April 6, 1883, John M. Glover made his final report as executor in the Sangamon county circuit court, showing that the debts of the estate and costs of administration had been all paid, leaving a balance due him, and his report was recorded, but he was not formally discharged as executor, and remained as trustee under the will.

The trust fund of $14,000.00 belonging to Emily Montgomery was invested and arranged for satisfactorily to the parties in interest, and is not here in controversy. John M. Glover as trustee held the trust fund of $14,000.00, being the two-thirds portion of the share of said Albert B. Condell, and kept the same invested in the purchase money notes and trust deed and other securities.   John M. Glover died intestate on November 11, 1891, in Missouri, leaving the said Mary J. Glover, his widow, and three children.   One Kendrick was appointed administrator of his estate in Missouri on January 30, 1892, but no administrator of his estate was appointed in Illinois. Mary J. Glover had in her hands the trust fund of $14,000.00 and interest belonging to Albert B. Condell, $10,000.00 thereof being in one of said purchase money notes and trust deed securing the same, and $4000.00

163—37

thereof being in a note of the Bonnett-Nance Stove Company. Upon bill filed by her in the Adams county circuit court, the appellant, Sudduth, was appointed trustee, as already stated, and the notes and securities, representing the fund of $14,000.00 set apart for the use of said Albert, were endorsed and delivered to said Sudduth as trustee.

On October 30, 1892, Albert B. Condell died intestate and unmarried, leaving no child or children or descendant or descendants of any child or children. The said fund of $14,000.00 with interest since his death is now in the hands of said Sudduth as trustee.

On March 14, 1883,—more than nine years before the death of Albert B. Condell,—Moses B. Condell and his wife executed the following quit-claim or release:

"This indenture, signed, sealed and delivered by Moses B. Condell and Helen M. Condell, his wife, of Sangamon county, Illinois, to Mary J. Glover, of LaGrange, Missouri:

" *Witnesseth:* That the said Moses B. Condell and wife, in consideration of $829.35 paid to the Marine and Fire Insurance Company of Springfield, Illinois, the receipt whereof is hereby acknowledged, do hereby give, grant, quit-claim and release to the said Mary J. Glover all their claim, right, title and interest in and to the estate of the late Thomas Condell and of the late Elizabeth H. Condell, lands, real estate and personalty, whereever situated, to have and to hold to her sole, separate and exclusive use and to her heirs forever.

"In testimony whereof we have hereunto set our hands and seals this 14th day of March, 1883.

M. B. CONDELL,        [Seal.]<br>
H. M. CONDELL.        [Seal.]"

Theretofore in March, 1882, Thomas E. Condell executed a similar quit-claim or release to Mary J. Glover.

It is conceded, that Moses B. Condell, Thomas E. Condell, Mary J. Glover and Emily Montgomery are still living.

The amounts advanced to Moses B. and Thomas E. Condell, and the amounts due upon the notes executed by them, with interest, exceeded the two shares of one-

sixth each, which were set apart for their use under their father's will.

CARL E. EPLER, for appellants.

GOVERT & PAPE, and PATTON, HAMILTON & PATTON, for appellees.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

There are now in the hands of the appellant, Sudduth, as trustee, notes and securities, amounting to $14,000.00, together with interest on said sum since October 30, 1892, which represent two-thirds of the sixth part devised to Albert B. Condell, deceased, under the will of his father, Thomas Condell. The question in this case is as to the ownership of the trust fund thus held by the trustee. The appellee, Moses B. Condell, claims that, since the death of his brother, Albert B. Condell, he is entitled to a proportionate share in the fund in question as one of the four surviving children of the testator. The appellants, Mary J. Glover and Emily Montgomery, claim that they are entitled to the whole of said fund, and that neither the appellee, nor Thomas E. Condell, has any interest therein. The appellant, Sudduth, as trustee, asks the instruction of the court as to the disposition to be made of the fund, both as to the income derived from the investment thereof and as to the principal of the fund itself, and not only as to the persons between whom the fund should be divided, but also as to the proportions in which the division should be made.

The grounds, upon which appellants base their contention, that the appellee has no interest in the fund, are, *first*, that he is barred from asserting such interest by the quit-claim deed or release, dated March 14, 1883, and executed by himself and his wife; and, *second*, that any interest which he would otherwise have had in the fund was extinguished by advancements made to him by

the testator.  In seeking a solution of the question involved, the subject will be considered from the two standpoints of the release and the advancements.

*First*, as to the release or quit-claim deed.  In order to determine whether or not the instrument of March 14, 1883, had the effect of cutting off appellee's claim to any part of the fund in question, it will be necessary to consider what is the character of the interest, which the surviving children of the testator took in the share. of Albert B. Condell after his death without living heirs of his body.  The nature of this interest is fixed by the terms and provisions of the will itself.  Although the fund of $14,000.00 grew out of what was done under the agreement of January 19, 1882, yet, by the terms of that agreement, the fund was turned over to the trustee appointed under the will for the use of Albert "according to the will."  And it is conceded by both sides, that the will operates to control the disposition of the fund.  What then are the terms and provisions of the will, so far as they bear upon the interest of the testator's children in the two-thirds share of Albert after he died without living heirs of his body?

The will directs the executors to sell all the estate, real and personal, except so much of the household furniture, etc., as the testator's wife might think fit to retain; and all the legacies are to be paid out of the proceeds of the sale.  The will is, therefore, to be regarded as a devise of money or personalty, and not of land.  (*Crerar* v. *Williams*, 145 Ill. 625).

The legacies in the will of Thomas Condell to his wife, Elizabeth H. Condell, failed or lapsed by reason of her death before the death of the testator.  This is true not only of the provision for the payment to her during her life of the interest or dividends on the one-sixth part of the estate mentioned in paragraph (a) of the fourth clause of the will, but also of the provision for adding the share of any child dying without living heirs of his body to the

sum held in trust for her benefit during her natural life, as contained in paragraph (g). The general rule is, that, if a legatee dies before the testator, the legacy lapses, because the gift cannot take effect until the death of the testator, and, if the legatee is then dead, he cannot be benefited thereby. (2 Woerner on Am. Law of Adm. sec. 434; 13 Am. & Eng. Ency. of Law, p. 28). This rule, however, does not extend to a legacy given over after the death of the first legatee. (*Prescott* v. *Prescott*, 7 Metc. (Mass.) 141). Paragraph (f) of the fourth clause of the will provides, that two-thirds of the sixth part devised to Albert B. Condell, or, as the case now stands, the fund of $14,000.00, "is to be held by my executors as trustees, and in trust for him, and is to be loaned out on good security or kept invested in stocks, and the interest or dividends is to be paid to him as the same accrues and is received, during his natural life, and after his death the principal of his share or part is to be paid to his heirs." The second sentence of paragraph (g) of the fourth clause provides, that, "in the event of the death of any of my children without living heirs of their body, their share of my estate shall be added to the sum held in trust for the benefit of my wife, Elizabeth H. Condell, during her natural life, and after her death the same shall be divided amongst my children in the same manner as is provided for the distribution of her share." Because the share of Albert, dying without living children of his body, could not be added to the sum held in trust for the benefit of the testator's wife by reason of her death before the death of the testator, it does not follow, that the last provision, to-wit: "the same shall be divided amongst my children in the same manner as is provided for the distribution of her share," is to be regarded as nugatory and of no effect. We have been referred to no authority so holding, nor have we been favored with any argument in favor of such a position. On the contrary, counsel on both sides have treated the provision in regard to division among the

children as being in force, though they differ as to its proper construction. We shall, therefore, consider the last sentence of paragraph (*g*) as though it read as follows: "In the event of the death of any of my children without living heirs of their body, their share of my estate   *   *   *   shall be divided amongst my children in the same manner as is provided for the distribution of her share."

What is meant by the expression: "in the same manner as is provided for the distribution of her share?" The reference here is evidently to paragraph (*a*) of the fourth clause, where one-sixth part of the remainder of the estate is required to be invested by the executors and the interest or dividends thereof to be paid to the wife during her life, and where, in the event of the wife dying without a will, as was the case here, it is provided as follows: "Then my executors, as trustees, shall hold the same in trust, and pay the interest or dividends derived therefrom to my children in such proportions as their circumstances may require to keep them from want or to furnish them with the necessaries of life for themselves and children."

It will be noticed, that paragraph (*a*) only provides for the payment of *the interest or dividends* derived from the wife's share to the children. It nowhere provides for the disposition of the *principal* of the one-sixth share set apart for the use of the wife during her life. Whether such principal was or was not intestate property, it is unnecessary for us to determine, as no question is made as to the wife's share. Its consideration is only important as bearing upon the meaning of paragraph (*g*), which directs that Albert's share shall be divided "in the same manner as is provided for the distribution of her (the wife's) share." There is no provision for the distribution of the wife's share, but only a provision for the distribution of the interest or dividends derived from that share.

We do not understand, that the words, "the same," as used in the above quoted portion of paragraph (*g*) refer to the income of Albert's share, or to the interest or dividends therefrom, but we think that they refer to the principal of Albert's share as referred to in paragraph (*f*). Paragraph (*g*) says: "In the event of the death of any of my children without living heirs of their body *their share of my estate* shall be added to the *sum* held in trust for the benefit of my wife during her natural life," etc. The words, "their share of my estate," as here used, must mean the principal of the share, because it is to be added to the "*sum*," that is, the *principal* held in trust for the wife. The income of the son's share would not be added to the principal of the wife's share; it is the share itself which is to be added to the amount invested for the wife's use. Paragraph (*g*) then proceeds as follows: "and after her death the *same* shall be divided." Clearly, in the grammatical construction of the sentence, the words, "the same," refer back to the words: "their share of my estate," that is to say, to the principal of the share of the deceased child.

As the principal of the two-thirds share of the deceased child dying without living heirs of his body is thus to be divided amongst the children in the same manner as is provided for the distribution of the wife's share, and as no provision is made for the distribution of the wife's share, it follows either that paragraph (*g*) provides for no mode of dividing the deceased child's share among the surviving children, or that such deceased child's share is to be divided amongst the children in the same manner as is provided for the distribution of the income or interest or dividends of the wife's share. We are inclined to regard the latter construction as the proper one. There is here evidently an omission by the testator of the words, "of the income," or "of the interest," or "of the dividends." With the omission supplied, the last clause of paragraph (*g*) would read as follows: "The same shall be divided

amongst my children in the same manner as is provided for the distribution *of the dividends* of her share." This harmonizes with the previous part of the will, to-wit: paragraph (*a*), where provision is made for the distribution of the dividends of the wife's share. Jarman, in his work on Wills, (vol. 2 Randolph & Talcott's 5th Am. ed. top p. 60) says: "It is established that where it is clear on the face of a will that the testator has not accurately or completely expressed his meaning by the words he has used, and it is also clear what are the words which he has omitted, those words may be supplied in order to effectuate the intention, as collected from the context." (*Kellogg* v. *Mix,* 37 Conn. 243). The insertion of the words above indicated effectuates the clear intention of the testator, and is necessary to give expression to his meaning. Without them, there is manifest ambiguity upon the face of the will. (2 Jarman on Wills,—R. & T.'s 5th Am. ed.— p. 60, note 1).

After these preliminary explanations, the provision of the will in regard to the disposition of the fund in controversy, which represents two-thirds of the sixth part devised by the testator to Albert, is substantially and in brief, as follows: the executors as trustees are to hold said two-thirds in trust for Albert, and lend it out or invest it, and pay him the interest or dividends therefrom during his life, and, after his death, pay the principal thereof to his heirs, but, in the event of his death without living heirs of his body, the same is to be divided among the children of the testator in such proportions as their circumstances may require to keep them from want, or to furnish them with the necessaries of life for themselves and children. The question again recurs: what interest in the two-thirds of Albert's share did this provision of the will give to the children of the testator after the death of Albert without living heirs of his body?

Leaving for the present the consideration of the original gift, it cannot be said that there are any words in the gift over, which import an indefinite failure of issue or contravene the rule against perpetuities. The language of the gift over is, that "in the event of the death of any of my children without *living* heirs of their body," etc. The words, "without *living* heirs of their body," import a definite failure of issue; and the language used refers to the death of any one of the children of the testator without heirs of his body, or issue, living at the time of his death. (*Smith* v. *Kimbell*, 153 Ill. 368). Where the limitation over is upon the first taker "dying without issue *living*," the will means issue living at the death of the first taker; and the limitation over is not too remote, but is good as an executory devise. (4 Kent's Com.— 12th ed.—marg. p. 277). Where the bequest is of personal property, slight circumstances, and other expressions, in the will will be laid hold of as indications of an intention, that a limitation over on death without issue shall take effect at a definite time, to-wit: at the death of the first taker. (*Bedford's Appeal*, 40 Pa. St. 18; *Ladd* v. *Harvey*, 21 N. H. 514; 4 Kent's Com.—12th ed.—marg. p. 282).

The construction of the words of the gift over in the case at bar as importing a definite failure of issue is supported not only by the use of the qualifying word, "*living*," but also by the fact, that the share of any one of the children dying without living heirs of his body is to be divided among the remaining children of the testator. These children are mentioned by name in the will, and belong to the same class as the first taker, and must be regarded as his survivors or persons in being at the time of his death. As was said by Mr. Justice STRONG in *Bedford's Appeal, supra:* "It has often been held, that a limitation over by will to survivors or persons in being, after the death of the first taker without issue, raises a strong pre-

sumption that the testator did not contemplate an indefi-
.nite failure of issue."

A gift over upon a definite failure of issue does not
alter the construction of the preceding limitation, but
engrafts upon it an executory devise to operate upon the
happening of the event specified. (11 Am. & Eng. Ency.
of Law, p. 924). As applied to land an executory devise
is "such a limitation of a future estate or interest in lands
as the law admits in the case of a will, though contrary
to the rules of limitation in conveyances at common law."
(2 Washburn on Real Prop.—5th ed.—marg. p. 341.) One
species of executory devise, as applied to lands, is "where
a fee simple is devised to one, but is to determine upon
some future event, and the estate thereupon to go over
to another." (Id. p. 344.) Or, stated more generally, one
species of executory devise relative to real estate is
"where the devisor parts with his whole estate, but, up-
on some contingency, qualifies the disposition of it, and
limits an estate on that contingency." (4 Kent's Com.
marg. p. 268). Limitations over upon the death of the
first taker without issue are construed as executory de-
vises on definite failure of issue after an estate in fee
simple. (2 Jarman on Wills—R. & T.'s 5th Am. ed.—
p. 485). Thus, a devise to A and his heirs, with a gift to
B, in case A dies without issue· surviving at the time of
his death, gives B an executory devise. (20 Am. & Eng.
Ency. of Law, p. 920, and cases in note 1).

Substantially the same rule applies to personal prop-
.erty. It has been said, that all future interests in person-
alty, whether vested or contingent, and whether preceded
by a prior interest or not, are in their nature executory,
and fall under the rules by which that species of limita-
tion is regulated. (20 Am. & Eng. Ency. of Law, p. 930).
Preston divides executory limitations of personalty into
three kinds, and says that the second sort is where there
is a complete disposition of the property, and there is
a substitution of another person to take in some event

which is to defeat or abridge the former gift.   (2 Preston on Abst. 142, 143; 20 Am. & Eng. Ency. of Law, p. 936).

Here, the original disposition of the two-sixths part of Albert's share was that it should be held in trust by the trustees and invested, and the interest or dividends paid to him during his life, and after his death the principal of his share was to be paid to his heirs.

It is a general rule, that where there is a gift of personalty to A and his heirs, A will take the absolute interest.   Strictly, the words, "heirs" and "heirs of his body," are inapplicable to personal property.   Whereas real estate is conveyed to a man, his heirs and assigns, personal property is assigned to him, his executors, administrators and assigns.   So, where there is a gift to A and his representatives, A will take the absolute property. So, also, a gift to A for life, and then to his personal representatives, will give A the absolute property.   (Williams on Personal Prop. marg. pp. 242, 243; Theobald on Law of Wills,—2d ed.—p. 371; 29 Am. & Eng. Ency. of Law, pp. 436, 437).   This rule applies where the personal property is in the hands of trustees; "thus, if money or stock be settled in trust for A for life and after his decease in trust for his executors, administrators and assigns, A will be simply entitled absolutely; in the same manner as a gift of lands to A for his life, with remainder to his heirs and assigns, gives him an estate in fee simple." (Williams on Personal Prop. marg. p. 244).   This is an application by analogy of the rule in *Shelly's case* to personal property.   (22 Am. & Eng. Ency. of Law, p. 512, and cases cited in note 3).   Though, strictly speaking, this rule has reference to real estate only, yet it is often applied to grants of personalty by way of analogy for the purposes of construction, and when so applied yields more readily to the apparent intention of the testator than it does in grants of realty.   (*Taylor* v. *Lindsay*, 14 R. I. 518; *Horne* v. *Lyeth*, 4 Har. & John. 431; Williams on Personal Prop. marg. p. 244).

The rule in *Shelly's case* applies to equitable as well as legal estates, but requires that both estates, the prior estate limited to the ancestor and the subsequent estate limited to the heirs, shall be of the same quality, that is, both legal or both equitable, because, if the prior estate is an equitable or trust estate and the subsequent estate is a legal one, the two do not unite as an estate of inheritance in the ancestor. (4 Kent's Com. marg. pp. 210, 211). Thus, if the legal estate is given to A in trust for B for life and the legal remainder to the heirs of B at his death, the rule cannot apply, as the legal and equitable estates cannot so coalesce as to give B either a legal or equitable fee. (1 Perry on Trusts,—3d ed.—sec. 358). So, also, if the trustee holding the property for A for life has active duties to perform, but at the death of A the trust for the heirs is merely passive, the statute will execute the use, so that the estate of the heirs is a legal one, while the prior estate is equitable. (22 Am. & Eng. Ency. of Law, p. 509, and cases in note 4).

But personal property is not within the Statute of Uses. In the case at bar, the trustees were to hold the proceeds of sale—the money or securities representing two-thirds of Albert's share—during his life and invest the same and pay him the interest during his life, so that the trust was an active one and his estate was equitable. At his death the principal of the share is to be paid to his heirs, and so, for the purpose of turning the share over to the heirs by payment, or delivery, or assignment of securities, the legal title at his death still remained in the trustees, and until such payment, delivery or assignment the estate of the heirs was equitable. In such cases the legal title remains in the trustee "until the purposes of the trust are accomplished, and until the possession of the property is in some way transferred to the person entitled to the use, or the last use." (1 Perry on Trusts, —3d ed.—secs. 311, 303; *Kirkland* v. *Cox*, 94 Ill. 400). If, therefore, in this case the original devise to the trustees

of the fund to be invested for Albert during his life and to be paid to his heirs at his death, considered separately from the gift over to the children of the testator, be construed by the application thereto of the principles involved in *Shelly's case*, it cannot be said, that the prior estate given for life to Albert, and the subsequent estate to go to his heirs, are not both of the same quality.

But, whether the rule in *Shelly's case* be applied by analogy to the original devise or bequest herein mentioned, or whether it be regarded as a gift to Albert and his heirs, in either case he thereby took the ownership of the fund, subject to the limitation over thereof to the children of the testator, upon the contingency of his death without living heirs of his body at the time of his death.

At common law there could be no limitation over of a chattel, so that, where a chattel or other personal property was given to one for life with a limitation over to another, the former took the absolute title, and the limitation over was void both at law and in equity, but in the course of time equity has established the doctrine that, where there is a gift of personal property to one for life with a limitation over to another, such limitation is good as an executory devise. (*Welsch* v. *Belleville Savings Bank*, 94 Ill. 191; 2 Kent's Com. marg. p. 352; 1 Schouler on Personal Prop. sec. 138). Cases, which hold that, where there is a gift of personal property to A and his heirs, A takes the property absolutely and there can be no limitation over in the event of his dying without issue, will be found, upon examination, to be cases where the words used import an indefinite failure of issue. Thus, in *Albee* v. *Carpenter*, 12 Cush. 382, it was held that a devise to A and her heirs of the residue of the testator's property, "and if said A die without issue or heirs," remainder over to others, gave A an estate tail by implication; and that any words in a devise of real estate, which would give an estate tail to the first taker with

or without a remainder over, would, in a bequest of personal property, give the first taker an absolute estate, and the remainder over would be void; but the holding was placed upon the ground, than the gift over was upon a general failure of issue, and for that reason made the estate an estate tail in the first taker, and it was there said by Chief Justice SHAW: " 'If she has no issue living at the time of her decease' may be a contingency, the happening of which may give effect to a bequest over as an executory devise, because it must vest at her decease and, therefore, has no greater effect than a gift for life." So, in the case at bar, the words of the gift over have been construed to mean in substance, that, if Albert shall die without heirs of his body living at the time of his death, the fund shall be divided amongst the testator's children; and, therefore, effect will be given to the gift or bequest over as an executory devise. "Limitations over in chattels have been supported like limitations of real property very generally. (*Holmes* v. *Williams*, 1 Root, 332, and many other cases). In many of the foregoing cases limitations of personal property over upon failure of issue of the first taker have been held good as limited upon a definite failure of issue." (3 Jarman on Wills,—R. & T.'s 5th Am. ed.—p. 374, note 1).

In Theobald on Wills,—2d ed., at page 371,—after stating the doctrine, that a bequest of personalty to a man and his heirs would no doubt pass the absolute interest, the author says : "Of course if, in wills,  *  *  * the gift over upon failure of issue can be limited to failure of issue at the death of the tenant for life, a prior gift to A and the heirs of his body gives A an interest defeasible upon failure of issue at his death." Here, Albert took an absolute interest in the fund defeasible upon failure of living heirs of his body at his death. And this is so notwithstanding the fund was in the hands of trustees.

In *Hughes* v. *Sayer*, 1 P. Wms. 534, where one, having two nephews, devised his personal estate to A and B, and if either should die without children, then to the survivor, the devise was held to be good.

In *Jackson* v. *Noble*, 2 Keen's Ch. 590, the testator gave real and personal estate to his daughter A and to two other persons, upon trust, to permit A to receive the rents and interest for life for her separate use, and after her decease, in trust, to convey to her heirs, executors, etc.; but in case A should marry and have no children, then the property to belong to D; or in case of his decease before A, then to his children; it was held, that A took an absolute equitable estate with an executory gift over to D and his children, etc.

In *Edelen* v. *Middleton*, 9 Gill, (Md.) 161, where a testator made a bequest to his son to be paid to him after the natural life of his wife and himself, at which death might last happen, but in case his son should die without lawful issue and before he possessed the property, the whole to go to his daughter; and the son died without issue in the lifetime of the testator; it was held that the limitation over to the daughter was good as an executory devise; that, by the words used, the testator showed that he meant a definite failure of issue, a dying without issue before the right to possess the property could accrue; that the widow took a life estate, etc.

In *Ladd* v. *Harvey*, 21 N. H. 514, personal property was given by a will to L. and her heirs, "in case she should leave at the time of her decease a living child or children born of her body," otherwise the property was to go to her father; and it was held, that the will referred to the legatee's dying without issue living at the time of her death, and that the limitation over to her father was a good executory devise. So, also, where a testator bequeathed leasehold property to A and to his lawful heirs, and if he die and leave no lawful heir, then to B, it was held that the limitation to B was good, the

words "leaving no lawful heir" being in the first place interpreted to mean "leaving no lawful issue," and then being confined to "leaving no issue at the time of his death." (*Goodtitle* v. *Peyden,* 2 T. R. 720). (See also *Boyd* v. *Strahan,* 36 Ill. 355; *Siegwald* v. *Siegwald,* 37 id. 430; *Summers* v. *Smith,* 127 id. 645; *Giles* v. *Anslow,* 128 id. 187).

This court has held in a number of cases that although a fee cannot be limited upon a fee by deed, yet it can be so limited by will by way of executory devise. (*Ackless* v. *Seekright,* Breese, 76; *Siegwald* v. *Siegwald,* 37 Ill. 430; *McCampbell* v. *Mason,* 151 id. 500; *Smith* v. *Kimbell,* 153 id. 368; *Palmer* v. *Cook,* 159 id. 300). The case of *Ewing* v. *Barnes,* 156 Ill. 61, so far as it holds to the contrary, is overruled. The language used in *Silva* v. *Hopkinson,* 158 Ill. 386, should be construed as applicable only to the facts of that case, and not as contravening the doctrine of *Siegwald* v. *Siegwald, supra,* and the other cases of a like character above referred to. If a fee can be limited upon a fee by way of executory devise as to real estate, there is no reason why, in case of a gift of personal property to one person, there cannot be a limitation over of such property by way of executory devise to other persons, especially where, as here, the latter belong to the same class as the first taker; provided always such limitation over does not contravene the rule against perpetuities, that is to say, provided it is to take effect upon a definite failure of issue. Indeed, Mr. Gray, in his work on the rule against perpetuities, says, at the close of the chapter on future interests in real estate and personal property, (sec. 98): "The result of the investigation pursued in the present chapter is this: Originally the creation of future interests at law was greatly restricted, but now, either by the Statutes of Uses and Wills, or by modern legislation, or by the gradual action of the courts, all restraints on the creation of future interests, except those arising from remoteness, have been done away."

From what has been said it follows that, Albert having taken an absolute interest in the fund in question determinable in the event of his death without living heirs of his body at the time of his death, and having died without living heirs of his body at the time of his death, the fund is to be divided amongst the surviving children of the testator, to-wit: Mary J. Glover, Emily Montgomery, Thomas E. Condell and Moses B. Condell in such proportions as their circumstances may require to keep them from want, or to furnish them with the necessaries of life for themselves and their children; and that the appellee, Moses B. Condell, is entitled to participate in that division, unless the interest to come to him upon such division has been released by the quit-claim executed by him.

The interest of appellee in the share of his brother, Albert, had not accrued when the quit-claim was executed. It was then a future contingent interest which might never ripen into possession. It was limited to take effect upon a contingency which might never happen, to-wit: upon the death of Albert without living heirs of his body. By an executory devise no estate vests upon the death of the testator, but only on some future contingency. (*Griswold* v. *Greer*, 18 Ga. 545; *Bristol* v. *Atwater*, 50 Conn. 402). We do not deem it necessary to discuss the question whether such a contingent, executory interest is assignable in equity or not. For the purposes of the present case it may be admitted that such an interest is assignable. If the instrument of release executed by appellee purported to release a future interest of any kind, then the question of the assignability of the interest in question would be presented. But the release is an ordinary quit-claim of all the "claim, right, title and interest," etc., of appellee and his wife, and contains no covenants of warranty. It is well settled that such an instrument does not pass a subsequently acquired interest. (*Holbrook* v. *Debo*, 99 Ill. 372).

"A conveyance of all the right, title and interest in lands is certainly sufficient to pass the land itself, if the party conveying has an estate therein at the time of the conveyance, but it passes no estate which is not then possessed by the party." (*Blanchard* v. *Brooks*, 12 Pick. 47). A quit-claim is sufficient to pass any estate which the person executing it has at the time of such execution, but it cannot effect by way of release a future contingent interest limited to the surviving members of a class upon the event of the death of one of them without living issue at the time of his death, there being no terms used in such quit-claim or release, which can be construed as referring to future interests. (*Striker* v. *Mott*, 28 N. Y. 82). In order to create an assignment of future interests and contingencies, "there must be on the face of the instrument expressly, or collected from its provisions by necessary implication, language of present transfer directly applying to the future as well as to the existing property, or else language importing a present contract or agreement between the parties to sell or assign the future property." (3 Pomeroy's Eq. Jur. sec. 1290). Here, the quit-claim does not amount to a release of future interests. While, therefore, the instrument of release executed by Moses B. Condell had the effect of passing all his interest in the share specifically set off to him or for his use in his father's estate, yet it did not have the effect of passing the future contingent interest in his brother Albert's share limited over to him so as to take effect only in the uncertain event of Albert's death without living heirs of his body.

The court could here direct the fund in question to be divided among the children of the testator in such proportions as their circumstances may require to keep them from want, or to furnish them the necessaries of life for themselves and children, if there were any evidence in the record upon that subject. Where a power in relation to the distribution of a fund is conferred by the testator

upon a trustee, the court will place itself in the position of the trustee, if the discretion of the latter is to be governed by some rule or state of facts which the court can inquire into and apply as effectually as a private individual could do; in such case, the court "can look with the eyes of the trustee" and substitute its own judgment for his. (1 Perry on Trusts,—4th ed.—secs. 255, 117). But there in no evidence in the record, to show, that any of the testator's children or grandchildren are in such circumstances as require them to be kept from want or to be furnished with the necessaries of life.    Hence, the court will execute the trust by dividing the fund equally among the children, on the ground that equality is equity. (Idem. sec. 255).    Counsel for appellants concedes in his brief, that, in the absence of evidence as to the circumstances of the testator's children, all the court can do is to carry out testator's general intent and divide the fund equally among the children entitled thereto.    The difference between appellants and appellee is not as to the principal of equality in the division, but as to the persons among whom the division should be made, appellants contending that the division should be between Mrs. Glover and Mrs. Montgomery only, and appellee contending that it should be made between them and himself and his brother, Thomas E. Condell.

Our conclusion is, that the fund here in question, with the interest accrued thereon since the death of Albert B. Condell, should be equally divided among the four surviving children of the testator above named, unless the right to such division, so far as appellee is concerned, has been cut off by advancements made to him in the lifetime of his father.

*Second*—As to the advancements.    Upon this branch of the case the contention of appellants is, that the moneys, charged to Moses B. Condell in the account attached to the will, and the notes against him held by the testator at the time of the latter's death, are advance-

ments, and that, as such advancements exceed in amount his share of the estate, he is not entitled to any interest in the fund in question without bringing into hotchpot what he has received. It is not at all clear, that the testator did not intend to draw a distinction between the advancements made to his children and the debts due to him from them, as evidenced by their notes. The intention to make such a distinction is very strongly indicated by the language used in the fourth section of the will and in the various clauses embraced under that section. But whether the notes, as well as the moneys charged in the account, are to be embraced in the amount of the advancements, or not, can make no difference in view of the language used in the first clause of the codicil. That language is as follows: "If, in the settlement of my estate according to the provisions of the foregoing will, it should appear that the amount advanced and loaned to my son Moses B. Condell should exceed his share of my estate, then his share shall be what he has already received and his notes shall be canceled and delivered to him." The will and the codicil are to be construed together. (*Jones* v. *Jones*, 124 Ill. 254). When they are construed together here, it will appear that the amount of the advances and loans to Moses B. Condell was not intended to be set over against the contingent and executory interest which might come to him in the event of the death of his brother, Albert, without living heirs of his body. The words, "settlement of my estate," refer to the adjustment of the estate in the due course of administration in the probate court, when the debts are paid, the credits are collected, and nothing remains but to proceed with the steps for the division of the residue. (*Giles* v. *Anslow*, 128 Ill. 187; *Valentine* v. *Ruste*, 93 id. 585; *Calkins* v. *Smith*, 41 Mich. 409). The reference here is not to the settlement of the trust imposed upon the executors by the will. An executor may serve in two capacities, and have two different sets of duties to perform. When he acts simply as ex-

ecutor, he performs the functions of administration, such as receiving and paying what is due to and from the estate. But, in addition to these duties, he may be appointed testamentary trustee under the will, and have another class of duties to perform as the donee of a power in trust. (*Calkins* v. *Smith, supra;* 7 Am. & Eng. Ency. of Law, p. 179; 1 Perry on Trusts, sec. 262; *Nevitt* v. *Woodburn,* 160 Ill. 203). The trust may last longer than the administration of the estate. The settlement here referred to is that which is made with the probate court under the 114th section of the Administration act, where it is provided, that "the county court shall enforce the *settlements of estates* within the time prescribed by law," etc. (1 Starr & Cur. Stat. p. 243).

That the settlement as executor, and not as trustee, is referred to is further apparent from the fact, that, when it takes place, the notes of Moses B. Condell are to be surrendered and delivered up to him, showing it to have been within the contemplation of the testator that his son, Moses, would then be alive; and it could not have been intended, that the notes should remain uncanceled and undelivered until the executory interests of Moses in the shares of his brothers and sisters should have been determined by their respective deaths.

The share of Moses was to be what he had already received and his notes were to be canceled and delivered to him if, at such settlement, it should appear that the amount advanced and loaned to him should exceed "his share of my estate." The word, "share," as here used, has the same meaning which it has when used in section 4 of the will and the clauses thereunder; that is to say, it refers to the one-sixth share given to Moses by the will, and does not include the executory contingent interest to accrue upon the death of Albert without living heirs of his body.

The word "share" in a will does not apply to executory interests taken under the will. "Accrued shares will

not pass under the word share or portion." (Theobald on Wills,—2d ed.—p. 516; 3 Jarman on Wills,—R. & T.'s 5th Am. ed.—p. 560).

In view of the first clause of the codicil, we are of the opinion that the advancements and loans made to Moses B. Condell do not have the effect of destroying or cutting off his interest in the fund in question.

For the reasons here stated the judgment of the Appellate Court and the decree of the circuit court are reversed, and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.           *Reversed and remanded.*

Mr. JUSTICE CARTER took no part in the decision of this case, having been of counsel in the court below.